Filed 1/20/15  P. v. Jimenez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ORION ARQUIMIDES JIMENEZ,<br><br>    Defendant and Appellant. | F067111<br><br>(Super. Ct. No. AF009165A)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Levy, Acting P.J., Gomes, J. and Kane, J.

# INTRODUCTION

Appellant Orion Arquimides Jimenez was charged in an information, filed on October 4, 2012, with attempted robbery (Pen. Code, §§ 664 & 212.5, subd. (c), count 1),[1] assault by means likely to produce great bodily injury (§ 245, subd. (a)(4), count 2), and active participation in a criminal street gang (§ 186.22, subd. (a), count 3). Counts 1 and 2 alleged the enhancement that appellant committed those offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). All three counts alleged an enhancement for committing great bodily injury on the victim in the commission of the offenses (§ 12022.7, subd. (a)).

The trial court denied appellant's pretrial motion to bifurcate the gang evidence from counts 1 and 2. The court further granted some of appellant's motions to exclude gang evidence and denied other motions to exclude such evidence. At the conclusion of a jury trial on March 21, 2013, appellant was found guilty of all three counts, as well as of the gang enhancements on counts 1 and 2. The jury did not find true the great bodily injury allegation alleged as to each count.

At the sentencing hearing on April 19, 2013, the trial court sentenced appellant to a term of two years on count 1 plus a consecutive term of five years for the gang enhancement, for a total prison term of seven years.[2] The court stayed appellant's sentences on counts 2 and 3 and the gang enhancement allegation in count 2 pursuant to section 654. Appellant was granted 465 days of presentence custody credit and the court imposed various fines and fees.

---

[1] Unless otherwise designated, all statutory references are to the Penal Code.

[2] The parties agreed in argument II of their briefs that there is a clerical error in the abstract of judgment. The clerical error, however, was subsequently corrected and appellant formally withdrew argument II of his opening brief by letter to this court filed July 14, 2014. On July 18, 2014, this court filed an order granting appellant's request to withdraw argument II.

Appellant contends he was denied due process because of the prosecution's focus on gang evidence and appellant's prior bad conduct. We disagree and affirm the judgment.

**FACTS**

*Motions In Limine*

Defense counsel filed motions in limine to exclude many types of evidence. There were 66 defense motions set forth in two written pretrial motions. Of these, 26 motions (motion Nos. 8–33) regarded police reports in which appellant was a suspect, or a participant, in suspected criminal activity. Many of the police reports involved appellant's conduct as a minor. The court excluded any reference at trial to police reports involving 18 of the incidents and denied appellant's motions as to eight police reports.[3]

The trial court deferred the People's in limine motion to permit impeachment of appellant with prior crimes of moral turpitude until such time as appellant was called as a witness. The court granted the People's motion to exclude reference to the victim's historic use of marijuana. The court denied the People's motion in limine to use appellant's prior convictions to establish the gang offense and enhancement, as well as the People's motion to use evidence of appellant's prior bad acts. The court denied appellant's motion to exclude reference to prior reports from the Kern County Sheriff's Department, as well as appellant's motion to bifurcate the gang allegations.

---

[3] The incidents in which appellant's motion in limine was denied involved the eight events in which appellant was contacted by the Arvin Police and found in possession of marijuana (No. 8); appellant was contacted in the presence of an intoxicated minor (No. 15); appellant was contacted by the police at the scene of a fight and was not detained (Nos. 16 & 17); appellant was suspected of possessing marijuana and breaking curfew (No. 24); appellant was contacted with respect to a suspected assault and no juvenile petition was filed (No. 26); appellant was found in possession of marijuana, in violation of curfew, and no juvenile petition was filed (No. 27); appellant was found in violation of curfew and no juvenile petition was filed (No. 28).

The trial court heard motions in limine on March 7, 8, and 11, 2013. Jury selection commenced on March 11, 2013, and a jury was sworn in the next day.

*Evidence of Attempted Robbery and Assault*

After visiting his sister on the evening of June 7, 2012, Jose Carreno stopped at a store on Walnut Street in Arvin and purchased a few items. As Carreno walked along Walnut Street toward his home on Royal Street, which was about three blocks away, he noticed a group of people drinking beer outside in a yard. A young man on a bicycle started to follow Carreno, stopped, and yelled at Carreno, asking what Carreno was doing in his "Varrio," which Carreno translated as neighborhood.

Carreno identified the man on the bicycle as appellant. Appellant was wearing a red and black hat with the letter "A" on it and a white T-shirt. One of the men who approached Carreno on foot was wearing a blue hat with the Letters "KC" on it.

Appellant stayed in one spot and stared at Carreno. Carreno told appellant to calm down. Two of appellant's friends walked over. Appellant and one of his friends began to hit Carreno. Carreno was hit about 10 times by the two men. Carreno's head was cut and bleeding. The jury was shown a photograph of Carreno's head after the attack.

Carreno spent two hours at the hospital being treated after the attack. Medical personnel cleaned Carreno's wound and stapled it. Carreno also suffered two loose teeth from being hit. After the attack, Carreno also suffers from headaches. At the time of the attack, Carreno was carrying a wallet with money. After the attack, appellant stuck his hand in Carreno's front pocket and attempted to take Carreno's wallet.

Arvin Police Officers William Funderburk and Jose Vasquez responded to a call from a home on Royal Street, where they met Carreno. Carreno reported that he had been the victim of an assault and an attempted robbery. Carreno told the officers he saw the assailants in front on a particular residence on Walnut Drive.

4

An hour earlier Officer Funderburk saw two individuals with whom he made regular contact on bicycles in the front yard of 722 Walnut Drive. Appellant was one of the people Funderburk had just seen on a bicycle. Carreno noted that appellant was wearing an Atlanta Braves hat and a white T-shirt. The next day, Carreno immediately identified appellant from a photographic lineup put together by Funderburk and another officer.

Emma Hernandez lived on Royal Street in Arvin. On June 7, 2012, Hernandez was watering her orange plants when she saw a man walking down the street coming from a store. A young man crossed the street. Hernandez could not see him clearly because it was dark. She could hear the word dinero. Two or three seconds later, she saw two additional men running. Hernandez heard someone say, "[R]un asshole because he's already getting his ass kicked." Hernandez noticed there was fight and walked toward her garage. Hernandez saw the victim get up on her nephew's truck that was parked outside. Hernandez approached the victim who told her they were beating him up because they wanted his money.

### Gang Evidence

On April 20, 2012, Arvin Police Officer Bryan Arthurs arrested appellant and transported him to the Arvin City Jail. Arthurs asked appellant questions and filled out an inmate questionnaire. Booking questionnaires are prepared by the booking officer and are used to document gang affiliation. Appellant told Arthurs his nickname was "Droopy," and he was a member of the Arvina Poorside gang. Appellant told Arthurs he should be kept away from Northerners. The booking questionnaire was submitted to the jury as People's Exhibit 1.[4]

---

[4] Arthurs testified during the in limine hearing, but was unavailable to testify before the jury. The parties stipulated that if called as a witness, he would testify as he did during the in limine hearing.

Mark Arvizu, a reserve police officer in Arvin, booked appellant into jail on March 13, 2010. Appellant claimed he was a member of the Arvina 13 gang. Officer Ryan Calderon of the Arvin Police Department testified as a gang expert. Calderon explained that the Arvina 13 gang is also known as the Arvina Poorside and the Arvin Poorside Locos gang. The principal rival of the Arvina 13 gang is the Lamont 13 gang, also known as the Varrio Chicos Lamont gang.

Officer Calderon used a number of sources to analyze gang activity. One source was a field interview card compiled whenever officers spoke to gang members during encounters with them in the field. Officers would write down details of what the gang member looked like and descriptions of his or her tattoos, which sometimes indicate affiliation with a particular gang. Among the Arvina gang tattoos are the letters AVN for Arvina, PS for Poorside, and APS for Arvina Poorside. Three dots in the form of a triangle stand for "my crazy life" and also for the number 13. Not all gang members have tattoos.

Other sources of information that Officer Calderon used to analyze gang activity included photographs, booking forms, and police reports from local police departments and the sheriff's office. The Arvina 13 gang associates with the color blue and uses certain hand gestures to represent their gang. Gang members ask people where they are from as a form of intimidation and to provoke fights.

The Arvina 13 gang existed for a significant period of time prior to June 7, 2012, and continues to exist. The primary criminal activities of the gang consist of burglary, robbery, assault with deadly weapons and to cause great bodily injury, vehicle theft, murder, attempted murder, possession of firearms, carjacking, and intimidation of witnesses. The Arvina 13 gang commits assaults on the street to intimidate the community so that citizens are less likely to give statements to police or testify against gang members. Intimidating the public helps the gang to facilitate other crimes.

Officer Calderon discussed crimes that, in his opinion, were committed to benefit the Arivna 13 gang. Calderon described a robbery in October 2011 at Smothermon Park, which was frequented by Arvina 13 gang members. Arvina 13 gang member Erasmo Rojas was involved. A male playing soccer was approached by Rojas and another Arvina 13 gang member, Thomas Aguilar, who exposed ice picks and demanded the victim's money. After the victim explained he did not have money, Rojas and Aguilar took his cell phone, a gold chain, and $32. Rojas was convicted of assault with a deadly weapon by means likely to cause great bodily injury and enhancement for committing the crime for the benefit of a criminal street gang. Calderon opined that Rojas committed the crime for the benefit of the Arvina 13 gang.

Officer Calderon described an assault with a firearm committed by Arvina 13 gang member Adam Arellano in January 2011. After getting into a dispute with a homeowner, Arellano yelled "Arvina" at the homeowner, grabbed a firearm and tried to fire it twice, but the gun jammed. Calderon opined that Arellano was an active participant in the street gang and acting for the benefit of the Arvina 13 gang. Arellano was convicted of assault by means likely to cause great bodily injury and a count of active participation in a criminal street gang.

In a third case, Rafael Valencia and three other Arvina 13 gang members approached two male victims in December 2008 and told them to give Valencia all of their money or they would be killed. Valencia placed a knife to one of the victims' ear. The victim suffered a cut to his ear. Valencia and one of the other assailants were wearing Kansas City Royals hats. The third assailant was wearing an Atlanta Braves hat. Valencia was convicted of grand theft of a person and participation in a criminal street gang. Officer Calderon opined that all three assailants were dressed in Arvina 13 gang attire and acted for the benefit of their gang.

7

In Officer Calderon's opinion, Arvina was a criminal street gang on June 7, 2012, when Carreno was assaulted and was an ongoing organization.

In evaluating whether appellant was an active member of the Arvina 13 gang, Officer Calderon considered a variety of information. Calderon reviewed photographs that were admitted into evidence of appellant in the company of other gang members in which he or the other members were flashing gang signs. Calderon also reviewed jail booking forms in which appellant admitted being a member of the Arvina 13 gang. Appellant admitted being a member of the gang on five different occasions between September 2007 and April 2012.

Officer Calderon further verified appellant's ongoing membership with the Arvina 13 gang through street checks and police reports. In January 2011, when an officer contacted appellant in Smothermon Park, appellant was wearing a Kansas City Royals hat. Appellant admitted being part of the Arvina Poorside gang. In January 2010, an officer contacted appellant wearing a Patriots hat. The "P" stood for Poorside. Appellant admitted he hated the number 14. Calderon explained this meant appellant was affiliated with a Southern gang. Northern gang members use the number 14.

In December 2009, Officer Schmick contacted appellant with four other known Arvina 13 gang members. In January 2010, appellant admitted having the alias "Droopy." In March 2010, appellant was arrested for contributing to the delinquency of a minor and resisting arrest. Appellant admitted being a member of the Arvina 13 gang. Appellant was arrested in June 2010 on a warrant. Appellant admitted he was a member of the Arvina 13 gang. In April 2012, appellant was arrested with another member of the Arvina 13 gang for possession of marijuana for sale, a primary activity of the Arvina 13 gang.

On January 1, 2010, appellant was identified as being in a fight that occurred at Bank of America and admitted he was a member of the Arvina 13 gang. On January 30,

8

2010, appellant was in a vehicle with other known gang members that was pulled over for a traffic violation.

In September 2007 and December 2008, appellant was arrested for curfew violations while in the company of a fellow gang member. In November 2007, appellant "jumped" another male while in the company of three fellow gang members. Appellant demanded to know where the victim was from. When the victim said he was from Bakersfield, appellant attacked him.

In July 2009, appellant was arrested with two fellow gang members after committing an assault in Lamont. In July 2010, appellant was involved in a police pursuit that ended in a collision. The pursuit began after shots were fired at rival gang members. Appellant was with two fellow gang members and was the driver of the vehicle. A stolen firearm was found in the vehicle appellant was driving.

Based on the foregoing evidence, Officer Calderon concluded that appellant was a member of the Arvina 13 criminal street gang when he assaulted and attempted to rob Carreno on June 7, 2012. Calderon was given a hypothetical scenario in which one assailant wore a black with the letter "A" and his companion wore a hat with the letters "KC," one assailant told the victim that the victim was in the assailant's "Varrio," and the victim was attacked. Calderon opined that the assault would instill fear in the community, and the crimes would benefit the gang.

### Defense Evidence

Appellant's mother testified that he was at home with her and other family members in Bakersfield on the evening of June 7, 2012. She further testified that appellant was using a computer and looking at Facebook. Defense Investigator Stanley Peterson testified that appellant made postings on Facebook at various times on the evening of June 7, 2012.

9

*Rebuttal*

Officer Dennis Park of the Bakersfield Police Department received training in high-tech computer crimes and investigations, social media, and extraction of data from cell phones. Park explained that a Facebook posting may be altered after its original posting. This could have been done by anyone if they knew appellant's account name and password.

## ALLEGED FOCUS ON APPELLANT'S GANG MEMBERSHIP

Appellant contends that the other crimes and bad acts evidence admitted by the trial court, as well as Officer Calderon's testimony concerning his convictions and imprisonment, were more prejudicial than probative and requires the reversal of his convictions. Appellant further contends that the prosecution's hyper focus on the gang evidence violated his due process right to a fair trial.

Gang evidence is admissible if it is logically relevant to some material issue in the case other than character evidence, is not more prejudicial than probative, and is not cumulative. (*People v. Avitia* (2005) 127 Cal.App.4th 185, 192 (*Avitia*); see also *People v. Sandoval* (1992) 4 Cal.4th 155, 175 [evidence defendant and victims were from rival gangs admissible to prove motive].) A properly qualified gang expert may, where appropriate, testify to a wide variety of matters, including things such as gang graffiti. Gang evidence is inadmissible if only introduced to show a defendant's criminal disposition or bad character to create an inference the defendant committed the charged offense. (*Avitia*, *supra*, 127 Cal.App.4th at p. 192.)

In cases not involving section 186.22 gang allegations, evidence of gang membership is potentially prejudicial and should not be admitted if it has minimal probative value. Where gang evidence is relevant, it may have a highly inflammatory impact on the jury and trial courts should carefully scrutinize such evidence. (*Avitia*, *supra*, 127 Cal.App.4th at p. 192; see *People v. Champion* (1995) 9 Cal.4th 879, 922

10

[questioned on other grounds in *People v. Combs* (2004) 34 Cal.4th 821, 860].) Gang evidence is admissible if relevant to prove motive or identity, so long as its probative value is not outweighed by its prejudicial effect. (*People v. Williams* (1997) 16 Cal.4th 153, 193.)

A trial court's admission of evidence, including testimony concerning gang activity, is reviewed for abuse of discretion. The trial court's ruling will not be disturbed unless it exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a miscarriage of justice. (*Avitia*, *supra*, 127 Cal.App.4th at p. 193.) In *Avitia*, the court found that the crimes alleged were not gang related, no section 186.22 allegation was made, and the gang evidence was irrelevant to any issue raised at trial. (*Avitia*, *supra*, 127 Cal.App.4th at p. 193.) *Avitia* held that the trial court abused its discretion by admitting testimony that gang graffiti was found in the defendant's bedroom. (*Id*. at pp. 191–193.)

Trial courts have broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125.) Even where the admission of evidence violates state law, as where the trial court abuses its discretion under Evidence Code section 352, due process is only violated if it makes the trial fundamentally unfair. Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional test under *Watson*.[5] (*People v. Partida* (2005) 37 Cal.4th 428, 439.)

Appellant, in contrast to the defendant in *Avitia*, was charged with the substantive offense of active participation in a criminal street gang (§ 186.22, subd. (a)), as well as gang enhancements (§ 186.22, subd. (b)(1)) for the attempted robbery and assault

---

[5] *People v. Watson* (1956) 46 Cal.2d 818, 836.

allegations. Mere active and knowing participation in a criminal street gang is not a crime. A defendant may only be convicted of the crime of gang participation if he or she willfully does an act that promotes, furthers, or assists any felonious criminal conduct by members of the gang. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130–1131.)

In addition to being charged with multiple provisions of section 186.22, the People's legal theory of appellant's motive for the crime was to benefit the Arvina 13 gang financially and through the use of intimidation in the neighborhood. To establish this theory, the People needed to establish that appellant was an active member of the gang, had acted for the gang's benefit in the past, as well as in his current attack on Carreno, and willfully furthered or assisted felonious criminal conduct by members of the gang.

The trial court conducted a lengthy in limine hearing and carefully weighed over 30 different instances in which appellant's involvement with the Arvina 13 gang came to the attention of the authorities. The court limited the People's use of other acts evidence to less than 10 of those instances. Thus, the trial court evaluated the probative value of the admitted evidence against its prejudicial effects. We hold that in doing so, the trial court did not violate Evidence Code section 352.

The court also gave the jury limiting instructions on how to weigh the gang evidence and the expert testimony. The jury received CALCRIM No. 1403, which states that the jury is only permitted to consider gang evidence for the limited purpose of deciding if the defendant acted with the intent, purpose, and knowledge required to prove the gang-related crime and enhancements, or, if the defendant had the motive to commit the crime charged. The jury is presumed to have followed the court's instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 436.)

We further reject appellant's argument that his due process rights were violated by the trial court admitting evidence of appellant's prior activities with the Arvina 13 gang.

12

Appellant relies on *People v. Albarran* (2007) 149 Cal.App.4th 214 (*Albarran*), which found that the gang evidence was only marginally relevant but was highly prejudicial and presented the rare occasion where erroneous admission of the evidence was fundamentally unfair. (*Id.* at pp. 228–232.) In *Albarran*, the trial court had found insufficient evidence to support the gang allegations, but otherwise found the gang evidence at trial admissible. (*Id.* at p. 225.)

The *Albarran* decision was distinguished in *People v. Williams* (2009) 170 Cal.App.4th 587, 612–613 (*Williams*). The *Williams* court found that unlike *Albarran*, the challenged gang evidence had direct relevance to and was directly probative of the gang enhancement and substantive gang crime allegations. The *Williams* court further found that there was no reasonable likelihood that the jury's passions were inflamed by other uncharged crimes evidence. (*Id.* at p. 613.) We find the facts of *Albarran* inapposite to those here and apply the *Williams* holding to the instant action.

Finally, even if we were to find that the trial court abused its discretion under Evidence Code section 352, the error here was not fundamentally unfair. Under the *Watson* standard of review, we would find any such error harmless.

## DISPOSITION

The judgment is affirmed.